# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JAMES DEAN EAKER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GARY MILLER, WRAPE, )<br>COBE, JAMES RITTER, )<br>BEANE, BOYD BENNETT, )<br>LINDA BISSONNETTE, COLLINS, )<br>SLACK, WALL, HILL, )<br>MONTGOMERY COUNTY )<br>HOSPITAL STAFF NURSING )<br>SUPERVISORS, RUTH HAIR, )<br>MATTHEW HARMODY, CHARLES )<br>STEWART, FREEMAN, HARRIS, )<br>NURSING STAFF, )<br>)<br>Defendants. ) | **MEMORANDUM OPINION**<br>**AND RECOMMENDATION**<br>1:07CV575 |

This matter is before the court on the following motions: (1) a motion for judgment on the pleadings (docket no. 82) filed by Defendants Slack and Freeman; (2) a motion for summary judgment (docket no. 67) filed by Plaintiff; (3) a motion for judgment on the pleadings (docket no. 64) filed by Defendant James Ritter; (4) a "motion to drop defendants from suit" (docket no. 59) filed by Plaintiff; (5) a motion for judgment on the pleadings (docket no. 29) filed by Defendants Beane, Bennett, Collins, and Miller; (6) a motion for judgment on the pleadings (docket no. 55) filed by Montgomery Memorial Hospital; (7) a motion to dismiss (docket no. 31) filed by

Defendants Wrape, Bissonnette, Miller, Hair,[1] and Harris; and (8) a motion to dismiss (docket no. 45) filed by Defendant Matthew Harmody.

The parties have responded to the respective motions and, in this respect, the matter is ripe for disposition.  The parties have not consented to the jurisdiction of the magistrate judge, thus the motions must be dealt with by way of recommendation.  For the reasons stated herein, it will be recommended that the motions to dismiss with respect to Plaintiff's Eighth Amendment claim based on deliberate indifference to serious medical needs be granted, Plaintiff's motion for summary judgment be denied, Defendants' motions for judgment on the pleadings on the ground that Plaintiff has failed to exhaust his administrative remedies under the PLRA with respect to the claim for failure to protect be granted, and Plaintiff's motion to voluntarily dismiss Defendants Montgomery Memorial Hospital and Dr. Harmody as Defendants be granted.

## I.  Background

Plaintiff is a state court prisoner currently incarcerated at Lanesboro Correctional Institution in Polkton, North Carolina.  On June 28, 2006, he filed a section 1983 action based on events that occurred while he was incarcerated at Southern Correctional Institution in Troy, North Carolina.  In that complaint, he alleged that on July 27, 2003, another inmate attacked and seriously injured him while correctional officers stood by and did nothing.  He also alleged that medical

---

[1]  Hair is erroneously pleaded as "Hare."

2

staff subsequently failed to treat his injuries properly. He alleged Eighth Amendment violations based on the defendants' failure to protect him from the attack by the other inmate and the defendants' deliberate indifference to Plaintiff's serious medical needs. By order filed August 8, 2006, this court sua sponte dismissed Plaintiff's action without prejudice to his filing a new complaint on proper forms. On September 8, 2006, Plaintiff moved for an extension of time to file a proper complaint. *Eaker v. Miller*, No. 1:06-cv-0648 (M.D.N.C.). On September 11, 2006, the motion was stricken.

On July 27, 2007, Plaintiff filed this action, again asserting claims based on the attack by the other inmate while he was incarcerated at Southern. He alleges that (I) corrections officials and staff at Southern failed to protect him from an assault on July 27, 2003, by inmate Terrance Scarboro and (ii) he did not receive adequate medical care for injuries sustained in the assault. He has named 18 Defendants, all of whom are corrections officials and medical personnel who treated Plaintiff after the attack by inmate Scarboro. The named Defendants were serving at all relevant times in the following capacities: (1) Gary Miller, Superintendent of Southern; (2) John Wrape, Assistant Superintendent of Southern; (3) James Ritter, Unit Manager at Southern; (4) Derwin Beane, Correctional Sergeant at Southern; (5) Boyd Bennett, Director of Division of Prisons, North Carolina Department of Corrections; (6) Dr. Linda Bissonnette, a medical doctor serving as an independent contractor providing medical care to inmates at Southern; (7) Christopher Collins, Assistant Unit

Manager at Southern; (8) Ruth Ann Hair, Nurse Supervisor at Southern; (9) Charles Harris, Nurse at Southern; (10) Hill, Correctional Officer; (11) Montgomery County Hospital Staff, Nursing Supervisors; (12) Matthew Harmody, a medical doctor providing medical care at Montgomery Memorial Hospital; and (13) "Nursing Staff, Registered Nurses."  The following named Defendants have not been served with process: (14) Wall, (15) Freeman, (16) Stewart, (17) Cobe, (18) and Slack.

## II.  Plaintiff's Allegations

### A.  Allegations Relating to Failure to Protect Plaintiff from Assault by Another Inmate

In his section 1983 complaint, Plaintiff alleges that around 4:30 p.m. on July 27, 2003, in the day room at Southern Correctional Institution, Plaintiff was attacked by fellow inmate Terrance Scarboro.  According to Plaintiff's allegations, inmate Scarboro used a lock attached to a belt to attack Plaintiff from behind and struck Plaintiff on the head at least three times.  Plaintiff took the lock from inmate Scarboro and this was witnessed by Correctional Officer Slack.  Inmate Janse Cook began yelling for help.  Plaintiff fell to the floor, and inmate Scarboro began kicking him.  Defendants Beane, Freeman, and Wall stood in the dormitory door and watched Scarboro kick Plaintiff.  Inmate Scarboro then used an ice pick to repeatedly stab Plaintiff in the back.  Defendants Beane, Freeman, and Wall observed the stabbing.  In full view of Defendants Beane, Slack, Freeman, and Wall, inmate Scarboro  tossed the ice pick to another prisoner.  Scarboro then picked up a large table, raised it over his head, and slammed it down on Plaintiff, in full view

4

of Defendants Beane, Slack, Freeman, and Wall. Officer Slack then entered the control booth and opened the dormitory door. Officer Freeman entered the dormitory and maced inmate Scarboro. Officer Beagle (not a named defendant) helped Plaintiff to a sitting position and called for medical assistance. Plaintiff lost consciousness and later woke up in the medical department at Southern. Officer Hill asked Plaintiff what he had done to inmate Scarboro to provoke the attack. Plaintiff replied that he had never done anything to Scarboro.

Based on the above allegations, Plaintiff has asserted that his Eighth Amendment rights have been violated because Officer Slack (I) did not summon help when he first saw inmate Scarboro attack Plaintiff; (ii) did not order inmate Scarboro to stop assaulting Plaintiff or to otherwise intervene; and (iii) did not open the dormitory door so that other officers could prevent further assaults by Scarboro. Plaintiff alleges that Defendant Beane violated his rights by standing and watching inmate Scarboro kick, stab, and slam a table down on Plaintiff. Plaintiff alleges that Defendants Miller and Collins violated Plaintiff's rights by failing to train their subordinates to respond to inmate-on-inmate attacks. Plaintiff alleges that Defendant Bennett violated Plaintiff's rights by failing to instruct correctional staff at Southern on inmate safety.

5

After inmate Scarboro assaulted Plaintiff, Correctional Officers Wall and Hill took Plaintiff to Montgomery Memorial Hospital. Defendant Dr. Harmody cleaned and stitched Plaintiff's left hand and cleaned and stapled Plaintiff's head wound. Plaintiff was given a shot of morphine and then a shot of Dilaudid for pain. A nurse gave Officer Wall a Lortab prescription for Plaintiff.[2] Plaintiff was returned to Southern on the same day and, after waking up, requested pain medication. He was given Percocet instead of Lortab.[3] On July 28, 2003, Plaintiff requested pain medication and was given Percocet. On July 29, 2003, Plaintiff requested pain medication and was given ibuprofen. Plaintiff asked the nurse why Lortab was not given to him, and the nurse stated that Dr. Charles Stewart had changed Plaintiff's prescription. On July 29, 2003, Plaintiff submitted a grievance complaining about the change in his pain medication. Also on July 29, 2003, around 2:30 p.m., Plaintiff was seen by Dr. Stewart. Plaintiff asked why he had not received any pain medication since 8:00 a.m. Dr. Stewart informed Plaintiff that he would take care of the matter, but Dr. Stewart did not explain why the originally prescribed pain

---

[2] The court takes judicial notice that Lortab is hydrocodone bitartrate and acetaminophen supplied in tablet form and "is a semisynthetic narcotic analgesic." PHYSICIANS' DESK REFERENCE 3240 (59th ed. 2005) (hereafter PDR); *see also* FED. R. CIV. P. 201(b).

[3] The court takes judicial notice that Percocet contains oxycodone hydrochloride and acetaminophen and "is a semisynthetic pure opioid agonist." PDR 1222.

medication had been changed. Plaintiff did not receive pain medication at the 4:00 p.m. medication call, but around 8:30 p.m. on July 29, he received prescriptions for Flexeril, Naproxen, and penicillin.[4] On July 29 and 31, 2003, Plaintiff submitted sick call requests complaining of severe head pain. Plaintiff declared medical emergencies on August 5, 15, and 28, and then again on September 30, 2003. Plaintiff also submitted sick call requests concerning pain on August 19 and 28 and September 2. Each time Plaintiff was only given Tylenol.

Based on the above allegations, Plaintiff claims violations of his Eighth Amendment rights. First, he alleges that Dr. Stewart violated Plaintiff's rights by changing his prescribed medication. Second, he alleges that Defendants Miller and Wrape, as "head administrators," violated Plaintiff's rights by allowing Dr. Stewart to change Plaintiff's prescribed medication. Next, Plaintiff alleges that Defendant Hair and unknown nursing staff at Southern violated Plaintiff's rights by carrying out Dr. Stewart's medical orders with knowledge that medications prescribed by him were inadequate to alleviate Plaintiff's pain. Finally, Plaintiff alleges that Defendant Dr. Bissonnette violated Plaintiff's rights by failing to question and intervene in Dr. Stewart's "medical negligence."

---

[4] The court takes judicial notice that Flexeril is used "as an adjunct to rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions," PDR 1931; and Naproxen is "recommended for the management of acute painful conditions," PDR 2875.

## III. Discussion

### A. Plaintiff's Motion to Dismiss Defendant Dr. Harmody and Defendant FirstHealth of the Carolinas, Inc., d/b/a Montgomery Memorial Hospital

In the complaint, Plaintiff alleges that Dr. Harmody violated Plaintiff's Eighth Amendment rights when he "failed to fully examine and treat Plaintiff for his assault wounds, and only treated the head and hand wounds that were clearly defined, creating neglective and negligent acts." (Compl. p. 18.) Plaintiff also named as a Defendant FirstHealth of the Carolinas, Inc., d/b/a Montgomery Memorial Hospital (hereinafter "Montgomery Memorial Hospital"). Defendant Montgomery Memorial Hospital filed an Answer on December 21, 2007, and an amended answer on January 7, 2008. (*See* docket nos. 26 & 28.) On January 25, 2008, Defendant Harmody filed an Answer. (*See* docket no. 34.) On February 11, 2008, Defendant Harmody filed a motion to dismiss. On February 15, 2008, Defendant Montgomery Memorial Hospital filed a motion for judgment on the pleadings.[5] On February 19, 2008, Plaintiff filed a "Notice to Drop Defendants From Suit," in which Plaintiff asked that the court dismiss Defendants Montgomery Memorial Hospital (referred to by Plaintiff as "Healthcare") and Dr. Harmody from the lawsuit.

Plaintiff's "notice to drop" Defendants Dr. Harmody and Montgomery Memorial Hospital from this lawsuit is properly categorized as a Rule 41 motion. Rule 41(a)(1)

---

[5] Defendant FirstHealth, d/b/a Montgomery Memorial Hospital is incorrectly referred to as "Montgomery County Hospital Staff" on the docket sheet, *see* docket no. 55.

of the Federal Rules of Civil Procedure allows a plaintiff to dismiss his complaint without prejudice and without the permission of either the adverse party or the court at any time before the defendant files an answer or a motion for summary judgment. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394-95 (1990). After the defendant has filed an answer or a motion for summary judgment, however, a plaintiff must seek dismissal under Rule 41(a)(2), which provides, in pertinent part, "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."

Plaintiff filed his Rule 41 motion for dismissal after Defendants Montgomery Memorial Hospital and Dr. Harmody filed their Answers. Therefore, the motion is appropriately deemed as one brought under Rule 41(a)(2). *See Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*, 2 F.3d 544, 546 (4th Cir. 1993). The purpose of Rule 41(a)(2) is to allow freely for voluntary dismissals "unless the parties will be unfairly prejudiced." *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). It does not appear that voluntary dismissal would cause Defendants Harmody or Montgomery Memorial Hospital to suffer "plain legal prejudice." Therefore, it is recommended that the court allow Plaintiff's motion to dismiss without prejudice all claims against Defendants Dr. Harmody and Montgomery Memorial Hospital.[6]

---

[6] Courts sometimes condition Rule 41(a)(2) dismissal upon payment of costs (including attorney's fees) to the defendants who are being dismissed. *See Southern Ry. Co. v. Chapman,* 235 F.2d 43 (4th Cir. 1956); *Sox v. Estes Express Lines,* 92 F.R.D. 71 (D.S.C. 1981). Such a condition would be futile here since Plaintiff is proceeding *in forma pauperis.*

9

B.  Defendants' Motions to Dismiss and for Judgment on the Pleadings

Standard of Review

The various Defendants have filed a FED. R. CIV. P. 12(c) motion for judgment on the pleadings as well as a FED. R. CIV. P. 12(b)(6) motion to dismiss.  In deciding a motion for judgment on the pleadings, the court should apply the same standard as when ruling on a motion to dismiss for failure to state a claim upon which relief may be granted.  *Burbach Broad. Co. of Del. v. Elkins Radio Corp.,* 278 F.3d 401, 405-06 (4th Cir. 2002).  The Fourth Circuit recently reiterated that standard in *Giarratano v. Johnson,* where the court stated:

> [W]e "take the facts in the light most favorable to the plaintiff," but "we need not accept the legal conclusions drawn from the facts," and "we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000); *see also Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003).  Additionally, the complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face."  *Bell Atl. Corp. v. Twombly,* --- U.S. ----, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007) (emphasis added).
>
> . . .
>
> The conclusion that dismissal is appropriate comports with *Twombly* . . . [when the pleadings do not disclose] "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 1974.  In *Twombly,* the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.* at 1964-65, upheld the dismissal of a complaint where the plaintiffs did not "nudge [ ] their claims across the line from conceivable to plausible."  *Id.* at 1974.

521 F.3d 298, 302 & 304 (4th Cir. 2008).

10

In addition, it is well settled that although pro se complaints are held to less stringent pleading standards, they are subject to summary dismissal under certain circumstances. *See, e.g.*, *Suarez v. Charlotte-Mecklenburg Sch.*, 123 F. Supp. 2d 883, 886-87 (W.D.N.C. 2000). A court may not rewrite a pro se petition to include claims never presented, nor may it "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not ignore a clear failure of a plaintiff to allege facts supporting a claim that is cognizable in federal district court. *Rice v. NSC*, 244 F. Supp. 2d 594 (D.S.C. 2001).

## I. Plaintiff's Eighth Amendment Claim Based on Failure to Protect from Assault By Another Inmate

Plaintiff's first claim is for an Eighth Amendment violation based on Defendants' failure to protect Plaintiff from an attack by another inmate. It is well-settled that the Eighth Amendment obligates prison officials to take reasonable precautions to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations omitted). Exposing prisoners to harm from other prisoners is not just or legitimate punishment; rather, it is cruel and unusual punishment, since "gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objectiv[e], any more than it squares with evolving standards of decency." *Id.* (internal quotation marks and citations omitted). In other words, a prisoner has a "constitutional right

11

'to be reasonably protected from the constant threat of violence and sexual assault from his fellow inmates . . . .'" *Withers v. Levine*, 615 F.2d 158, 161 (4th Cir. 1980) (quoting *Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973)). Thus, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *see also Winfield v. Bass*, 106 F.3d 525, 531 (4th Cir. 1997). A prisoner alleging that prison officials have failed to protect the prisoner from another inmate must show (I) that the prisoner was incarcerated under conditions posing a substantial risk of serious harm and (ii) that the defendants were deliberately indifferent to those conditions. *Farmer*, 511 U.S. at 834.

Exhaustion under the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a)(2006). The PLRA provides in pertinent part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. The Court made clear in *Porter*

12

that "exhaustion in cases covered by § 1997e(a) is now mandatory." *Id.* at 524. The court noted that a district court has no discretion, as had existed prior to the PLRA, to determine whether administrative remedies needed to be exhausted in a particular case. *Id.* The Court further stated that "[e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Id.* The Court further stressed that under the statute, exhaustion must take place before the commencement of the civil action in order to further the efficient administration of justice. *Id.* In another recent Supreme Court case, *Woodford v. Ngo*, the Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" 548 U.S. 81, 90 (2006) (emphasis in original). Finally, and most recently, in *Jones v. Bock*, 127 S. Ct. 910 (2007), the Supreme Court stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 918-19.

The North Carolina Department of Corrections ("DOC") has an Administrative Remedy Procedure which governs the filing of grievances in each of its correctional facilities. The DOC's Administrative Remedy Procedure provides that "any aggrieved inmate may submit a written grievance . . . ." DOC ARP § .0310(a)(1). If the inmate is not satisfied with the decision reached at this first step ("Step One")

13

of the grievance process, he or she may request relief from the Facility Superintendent. DOC ARP § .0310(b)(1). If the inmate is not satisfied with the decision reached at this next step ("Step Two") of the grievance process, he or she may appeal to the Secretary of Correction through the Inmate Grievance Examiner (IGE). DOC ARP § .0310(c)(1). The decision by the IGE or a modification by the Secretary of Correction shall constitute the final step ("Step Three") of the Administrative Remedy Procedure. DOC ARP § .0310(c)(6). Finally, the DOC's Administrative Remedy Procedure provides that a grievance may be rejected at any administrative level if more than a year has passed between the event complained of and submission of the grievance. DOC ARP § .0306(b)(2).

In support of the motion for judgment on the pleadings based on failure to exhaust, Defendants contend that the record contains only one grievance submitted at Southern that is related to the attack by the other inmate.[7] In Grievance 3600-E-03-078, dated July 29, 2003, Plaintiff complained of injuries sustained in the July 27 assault. He described medical care rendered at a local hospital, including a prescription for Percocet. He complained that on July 29, 2003, a nurse at Southern gave him only ibuprofen, stating that the prison doctor had changed Plaintiff's medication. Furthermore, Plaintiff had a headache and ibuprofen did not help. For relief, Plaintiff requested to be put back on the pain medication prescribed by the

---

[7] The record also contains two other grievances, both filed in 2004 at Lanesboro Correctional Institution. These latter two grievances have nothing to do with the attack by the other inmate while Plaintiff was incarcerated at Southern.

14

hospital physician. On September 22, 2003, the Inmate Grievance Examiner dismissed Plaintiff's grievance. The Examiner considered Plaintiff's claim of the need for pain medication prescribed by the hospital physician and found that there was no evidence that staff at Southern violated any applicable policy relating to Plaintiff's medical care.

Since grievance 3600-E-03-078 was appealed to and received a decision by the Inmate Grievance Examiner, it appears that Plaintiff exhausted the claim submitted in this grievance. Nothing in grievance 3600-E-03-078, however, indicates or even suggests that Plaintiff was complaining that prison officials or staff failed to protect him from an assault by another inmate or that he was seeking relief based on failure to protect. Indeed, the grievance relates only to his claims of indifference to his medical needs. Therefore, DOC was deprived of the opportunity to address and resolve the merits of any claim based on failure to protect. Plaintiff's complete failure to present a grievance based on failure to protect requires dismissal of that claim.

In response to the motion for judgment on the pleadings, Plaintiff does not contend that he complained about the Southern staff's failure to protect him from the assault by another inmate in Grievance 3600-E-03-078 dated July 29, 2003. Rather, in his response he has submitted copies of three additional grievances–dated January 18, 2004, January 28, 2004, and July 14, 2004. He contends that in each of these grievances he complained about the Southern staff's failure to protect him

15

from assault by the other inmate.  (*See* Pl.'s Response Br. Exs. E-F, docket no. )

Plaintiff has attached a full statement of facts from his grievance filed on July 14, 2004, while Plaintiff was incarcerated at Lanesboro, after he was transferred away from Southern.   In the grievance statement filed on July 14, 2004, Plaintiff complained about the failure of the staff at Southern to protect him from an attack by another inmate.  The July 14, 2004, grievance stated that it was rejected based on "beyond control of DOC."  Plaintiff does not assert that he took the July 14, 2004, grievance to the next step in the grievance level, or that he filed a new grievance when this grievance was rejected.  Plaintiff has also attached a copy of a second grievance form, filed while Plaintiff was still at Southern, in which only the date of January 18, 2004, is legible.  The type is so light on the rest of the grievance form, however, that it is impossible to read any of the words in the grievance statement, and it is impossible to discern why the grievance was rejected.   Plaintiff also attached a copy of a third grievance form, also filed at Southern, which is purportedly the grievance filed on January 28, 2004.  This third grievance form is also impossible to read, except for a notation stating that the grievance was rejected because "more than one incident" was complained of in the grievance.[8]

---

[8] Section .0306(b)(4) of the North Carolina Department of Correction Administrative Remedy Procedure states that an inmate grievance may be denied if the inmate requests a remedy for more than one incident.

16

The court finds that Defendants are entitled to judgment on the pleadings based on Plaintiff's failure to exhaust his administrative remedies as to his claim of an Eighth Amendment violation based on Defendants' failure to protect him from an attack by another inmate. It appears that Plaintiff has produced at least one grievance, and possibly three, in which he complained about the Southern staff's failure to protect him from an attack by another inmate. As Defendants note, however, he has failed to show that, within the one-year period provided for submitting a grievance complaint of failure to protect on July 27, 2003, that he resubmitted any of these rejected grievances or a new grievance that he then pursued through all levels of administrative review. It will, therefore, be recommended that this claim be dismissed without prejudice based on Plaintiff's failure to exhaust his administrative remedies.

ii. Plaintiff's Eighth Amendment Claim of Deliberate Indifference to Serious Medical Needs by the Staff at Southern

Next, as to Plaintiff's claim for an Eighth Amendment violation based on inadequate medical care, the moving Defendants contend that this claim should be dismissed because Plaintiff's allegations present, at most, a dispute over medical treatment administered to him for pain or a negligence claim. For the following reasons, I agree.

The United States Supreme Court held in *Estelle v. Gamble* that the Eighth Amendment proscribes acts or omissions by prison officials that are "sufficiently

17

harmful to evidence deliberate indifference to serious medical needs." 429 U.S. 97, 106 (1976). Following *Estelle*, courts have developed a two-part test for evaluating section 1983 claims alleging Eighth Amendment violations as to medical care. First, courts evaluate whether there is evidence of a serious medical need. If the answer is yes, courts then consider whether the defendant's response to that need amounted to deliberate indifference. *Mandel v. Doe*, 888 F.2d 783, 787-88 (11th Cir. 1989). The deliberate indifference standard requires a plaintiff to prove that "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Deliberate indifference is a subjective standard akin to criminal law recklessness and focuses on the defendant's conscious disregard of a substantial risk of harm. *See id.* at 836-37. In other words, to be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Although "deliberate indifference" is a subjective standard, a prison official's knowledge "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842. For example, a fact-finder may infer "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

As the Supreme Court made clear in *Estelle*, however, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." 429 U.S. at 105. Mere negligence or medical malpractice

18

is not sufficient to establish deliberate indifference. *See West v. Atkins*, 487 U.S. 42, 48 n.8 (1988); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). Therefore, an "error of judgment" on the part of prison medical staff, or "inadvertent failure to provide adequate medical care, while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable under § 1983." *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979) (internal quotations omitted). Moreover, mere disagreements between a health care provider and an inmate over the proper course of treatment do not state a viable Eighth Amendment claim. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Rather, to establish deliberate indifference, the plaintiff must show that the treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement [or] supplying medical needs." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

a.  Liability as to the Doctors Who Treated Plaintiff

Plaintiff named as Defendants the following doctors and alleges a claim for deliberate indifference to serious medical needs against each Defendant: Dr. Stewart, Dr. Harmody, and Dr. Linda Bissonnette. As noted, Plaintiff has filed a

19

motion to voluntarily dismiss Dr. Harmody as a Defendant. Furthermore, Plaintiff has never served Dr. Stewart with process. Thus, Dr. Linda Bissonnette is the only medical doctor remaining as a Defendant. Specifically, Plaintiff alleges that Defendant Bissonnette "violated Plaintiff's Eighth Amendment rights . . . by failing to intervene on Defendant Stewart's medical negligence when she allowed Plaintiff to remain in severe pain without questioning Defendant Stewart's actions thus causing continued severe pain and suffering by Plaintiff with reckless and wanton disregard for Plaintiff's welfare." (Compl. p. 18.) These allegations are not enough to state a claim for deliberate indifference to serious medical needs. Plaintiff's assertion that Defendant Bissonnette failed to question or intervene in treatment provided by Dr. Stewart at most might present a negligence claim, which would not amount to a constitutional claim. Therefore, the claim for deliberate indifference to serious medical needs against Dr. Linda Bissonnette should be dismissed.

b. Liability as to the Nurses Who Treated Plaintiff Based on the Nurses' Refusal to Disobey Doctor Stewart's Orders Regarding Medication

Next, Plaintiff also contends that the nurses at Southern who treated him violated his Eighth Amendment rights by obeying the doctors' orders regarding medication given to Plaintiff. Plaintiff alleges that Defendants Hair, Harris, and unknown nursing staff at Southern violated Plaintiff's Eighth Amendment rights "by not performing their duties as a medical team, causing Plaintiff's continued pain and suffering when they carried out Defendant Dr. Charles Stewart's medical orders,

even when they knew the extent of Plaintiff's severe injuries and that medications prescribed by Defendant Stewart were inadequate to be a sufficient pain eliviator [sic]." (Compl. p. 14.) The allegations against the nursing staff are, at most, allegations of negligence. That is, Plaintiff is unhappy that he was given over-the-counter pain reliever rather than stronger narcotics on certain days when he contends he was in severe pain. The record shows, however, that Plaintiff remained under constant supervision for his medical needs, and his disagreement with Dr. Stewart over his medication does not rise to the level of an Eighth Amendment claim against Dr. Stewart. *Accord Jennings v. Natrona County Detention Ctr. Med. Facility*, 175 F.3d 775, 781 (10th Cir. 1999) (affirming frivolity dismissal of a prisoner's section 1983 action based on disagreement over prescribed medications). It follows that Plaintiff also cannot state a claim against the nursing staff at Southern based on the nurses' refusal to disobey Dr. Stewart's orders regarding what medicine Plaintiff was to receive. For these reasons, Plaintiff's Eighth Amendment deliberate indifference claim against the named Defendant nurses at Southern and unknown nursing staff should be dismissed for failure to state a claim.

c. Liability as to Defendants Miller and Wrape as Supervisors

Finally, Plaintiff also seeks to hold Defendants Miller and Wrape liable as supervisors for the alleged deliberate indifference to medical needs by the medical staff at Southern. Even if Plaintiff could state a claim for deliberate indifference, Defendants Miller and Wrape could not be held liable merely based on supervisor

21

liability. It is undisputed that Defendants Miller and Wrape were not involved in treating or responding to Plaintiff's complaints about his pain.[9] The doctrine of respondeat superior generally has no application in section 1983 cases. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 693-94 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). In section 1983 actions, to hold a supervisor liable for a constitutional injury inflicted by a subordinate, the following three elements must be found: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Establishing the existence of a persuasive and unreasonable risk requires evidence that the conduct is widespread "or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* Plaintiff has failed to show that Defendants Miller and Wrape knew about and were indifferent to or

_____

[9] As Defendants note, the duties of a DOC Correctional Administrator or Superintendent do not include making clinical decisions regarding medical treatment for inmates. Rather, the administrator's duty is to ensure that a system is in place for delivering medical care to inmates.

22

authorized any alleged unconstitutional conduct by the medical staff at Southern. Therefore, even assuming that Plaintiff could show deliberate indifference, which he cannot, he fails to allege that these two individuals participated in any of the conduct that he alleges constitutes deliberate indifference.

## IV.  Conclusion

For the reasons stated herein, Plaintiff has failed to exhaust his administrative remedies with respect to his claim for an Eighth Amendment violation based on failure to protect him from another inmate, and that claim should be dismissed without prejudice.  Furthermore, Plaintiff has failed to state a claim for deliberate indifference to serious medical needs, and that claim should be dismissed with prejudice.  To this extent, **IT IS RECOMMENDED** that the motions for judgment on the pleadings (docket nos. 29, 64, and 82) filed by Defendants Beane, Bennett, Collins, Miller, Ritter, Slack, and Freeman be **GRANTED**; the motion for summary judgment (docket no. 67) filed by Plaintiff be **DENIED**; the "motion to drop defendants [Harmody and Montgomery Memorial Hospital] from suit" (docket no. 59) filed by Plaintiff be **GRANTED**; the motion for judgment on the pleadings (docket no. 55) filed by Montgomery Memorial Hospital be **DENIED** as moot; the motion to dismiss (docket no. 31) filed by Defendants Wrape, Bissonnette, Miller, Hair, and Harris be **GRANTED**; and the motion to dismiss (docket no. 45) filed by Defendant Harmody be **DENIED** as moot.  The court should further note in the judgment and order that the Eighth Amendment claim based on failure to protect is dismissed

without prejudice for failure to exhaust administrative remedies.  Moreover, because Plaintiff is seeking a voluntary dismissal of Defendants Harmody and Montgomery Memorial Hospital, these Defendants should be dismissed without prejudice.  If the court adopts this Recommendation, there will be no remaining claims in this matter.  To this extent, the various pending discovery motions (docket nos. 38, 42, 48, 54, 60, 62, 66, 75) will be rendered moot.

_____
Wallace W. Dixon
United States Magistrate Judge

September 15, 2008